UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---

SEAN GEORGE,

    *Plaintiff*

v.

J. HORNE, et. al.,

    *Defendants*

CIVIL ACTION
1:22-cv-02176-SCJ

---

### PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF ATLANTA'S MOTION TO DISMISS

Defendant City of Atlanta filed a motion to dismiss Plaintiff's claims against the City of Atlanta, namely Count II (Facial and As Applied First Amendment Challenge to the Municipal Curfew Order) and Count III (False Arrest, Retaliatory Arrest / Selective Enforcement) arguing that the complaint fails to state a claim. For the reasons stated herein, Defendant's motion to dismiss should be denied.

### ARGUMENT

**Plaintiff properly alleges claims against the City of Atlanta where the City's Curfew was unconstitutional both facially and as applied.**

A) The Curfew Policy is facially unconstitutional.

Defendant alleges that where Plaintiff "fails to allege a claim that the curfew order is *always* unconstitutional...he fails to state a claim that the curfew order was unconstitutional...facially." ECF Dkt. No. 14-1 at 5 (emphasis in original). This is incorrect. The Supreme Court and this Circuit have established ways in which a Plaintiff can establish that a

1

policy or custom like the one in question here is facially unconstitutional without establishing that the policy is necessarily unconstitutional in every application. United States v. Frandsen, 212 F.3d 1231, 1236 (11th Cir. 2000) ("...the Supreme Court and this Court consistently have permitted facial challenges to prior restraints on speech without requiring the plaintiff to show that there are no conceivable set of facts where the application of the particular government regulation might or would be constitutional").

At the outset, it should be made clear that the "policy" alleged in the Complaint is not limited to the plain language of the multitude of contradictory orders and statements emanating from the City of Atlanta. Rather, "policy" should be interpreted broadly to include not only the written letter of the multiple curfew orders (See Compl. at ¶¶ 25-28) but also the explicit statements of policy-making officials, including Defendant City of Atlanta and Defendant Shields (see Compl. at ¶¶ 15-24) and actions taken by City personnel pursuant to the Curfew policy, including Mr. George's unlawful arrest outside the designated curfew time, the arrests of others pursuant to the Curfew policy (see Compl. at ¶¶ 84-91) and the emergence of exceptions and clarifications to the Curfew policies communicated via the internet (see, e.g. Compl. at ¶¶ 92-94). That is because constitutionally offensive actions of City employees and personnel "can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' to towards the misconduct." See Doe v. Savannah-Chatham Cty, Case No. 21-13023 (11th Cir. 2022) (citing Griffin v. City of Opa-Locka, 261 F.3d. 1295 (11th Cir. 2001). In other words, the actually existing policy, rather than what is necessarily in writing, dictates the presence of an unlawful policy. Indeed, "§ 1983 liability may be imposed on a municipality based on governmental custom even though such a custom has not received formal

approval through the body's official decisionmaking channels." Griffin, 261 F.3d at 1308 (citing Brown v. City of Ft. Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991).

Defendants argue that Plaintiff has failed to put forward sufficient facts or only put forward conclusory recitals to suggest that the City's custom extended beyond that which was written in the Curfew order, such as the practice of arresting individuals like Mr. George upon leaving a protest despite not violating the curfew order's time limits as written. See ECF Dkt. 14-1 at 9-10.

To the contrary. The complaint plainly alleges, citing reports in the media, particularly those indicated in Atlanta Magazine, that numerous individuals were, like Mr. George, arrested because the curfew was enforced prior to the established time of 9PM or alternatively during the written time limits of the Curfew Order only because they were blocked from leaving. See Compl. at ¶ 95 (citing Atlanta Magazine (June 8, 2020) available at https://www.atlantamagazine.com/news%02culture-articles/a-week-of-curfews-in-atlanta-creates-plenty-of-confusion/). The article cited includes these specific reports: "As for protesters, of the 532 arrests since May 30, the majority have been for curfew violation. But even people who willingly dispersed at curfew time have been arrested, says Atlanta attorney Kalpin Shah, who is among a group of 200 or so attorneys volunteering to represent arrested protesters...Many demonstrators said they were just trying to leave, Shah says. " 'Right about 9 p.m., when they're walking to their cars, they're getting arrested.'" This is plainly a description of what happened to Mr. George. The article goes on to discuss similar instances of preventing individuals from leaving and then subsequently arresting them. Id.

The Complaint further alleges: that the City of Atlanta fired and prosecuted two police officers for enforcing the curfew against two college students, who received apologies, only for the charges to be subsequently dropped where the Fulton County District Attorney's office determined that the officers were enforcing the curfew as directed (Compl. at ¶¶ 84-90); that the City of Atlanta announced via Twitter the existence of previously unwritten "exceptions" to the curfew enforcement for "people seeking medical help, working, first responders & homeless" (Compl. at ¶ 92); that the City of Atlanta subsequently indicated in another unwritten exception that there are no restrictions on vehicular travel within the city and that businesses do not have to close at the time indicated in the Curfew policy, while still inexplicably suggesting that patrons of those same businesses are subject to the curfew's restrictions if they are on streets and sidewalks (Compl. at ¶ 93); that the City of Atlanta indicated that the Curfew did not apply to individuals waiting in line to vote (Compl. at ¶ 94); and that City officials made statements that were inflammatory and hostile regarding protests generally, and could indicate to a reasonable fact-finder that the purpose of the policy – written or unwritten – was to unlawfully suppress protected speech. (Compl. at ¶¶ 15-24).

A.1) Vagueness

The Curfew policy is facially unconstitutional for its vagueness. Vagueness is one basis for a facial challenge of a policy in which a Plaintiff need not establish that a policy is unconstitutional in every instance. Horton v. City of St. Augustine, 272 F.3d 1318, 1330 (11th Cir. 2001) (citing City of Chicago v. Morales, 527 U.S. 41, 55 (1999)). In Morales, the Supreme Court invalidated an ordinance purportedly designed to stop gang activity where it banned "loitering," defined by the ordinance to mean "to remain in any one place with no apparent

purpose". Morales, 527 U.S. at 50 (emphasis in original). The Court concluded that the policy was unconstitutionally vague where it gave citizens no notice of what was or was not forbidden.

The Curfew policy enacted and enforced by the City of Atlanta is facially invalid for the same reason. Plainly, nobody, including the City's officers were completely sure what the scope and application of the Curfew order was. The City fired and criminally charged multiple officers and apologized to their arrestees only to subsequently conclude that they were simply enforcing the Curfew. The City indicated that businesses could remain open, but that their customers could be arrested when they entered or left. The City issued multiple exceptions via Twitter or Facebook that were not present in the written orders. The City created exemptions for certain categories of activity and certain kinds of speech-related activity, including voting. The City's enforcement of the curfew consistently involved arresting people before the stated time or preventing them from leaving. These allegations indicate that the City's actual curfew policy was unconstitutionally vague.

A.2) Overbreadth

The Curfew policy is facially unconstititutional due to its overbreadth. Even a clear and straightforward policy can be unconstitutionally overbroad where it sweeps within its prohibitions that which may not be punished under the First Amendment. Grayned v. City of Rockford, 408 U.S. 104, 114 (1972). Defendants cite Hassan v. City of Atlanta, Case No. 1:21-cv-4629-TWT, 2022 WL 1778211 at 3 (N.D. Ga. June 1, 2022) (quoting Smith v. Avino, 91 F.3d 105, 109 (11th Cir. 1996)) arguing that a lower standard than strict scrutiny applicable to emergency contexts should be used to evaluate whether the Curfew Policy was constitutional. According to this standard, emergency restrictions on speech and assembly require considering

only whether the restrictions were "taken in good faith" and whether "There is some factual basis for the decision that the restrictions imposed were necessary to maintain order". Id.

First, there is legitimate reason to question whether or not the emergency standard applies. The Curfew in effect was taken the night following the initial protests regarding George Floyd's murder. While Plaintiff concedes that some acts of criminality took place at the time that the Curfew was imposed (Compl. at ¶ 14), it remains a significant question of fact precisely how extreme, widespread or associated with the protests these acts were. Indeed, incidents of looting, vandalism, and violent crimes are unfortunately a normal aspect of life in a large city in which crime rates are severe. The progeny of cases on which Defendant's argument for a stricter "emergency" standard is based cites largescale natural emergencies such as hurricanes and instances of civil unrest that are far more violent than anything that happened on May 30, 2020 or indeed into the following weeks. Smith, 91 F.3d at 109 (citing "Moorhead v. Farrelly, 727 F. Supp. 193 (D.V.I. 1989) (ravages of Hurricane Hugo); United States v. Chalk, 441 F.2d 1277 (4th Cir. 1971) (civil unrest after racial incident); In re Juan C., 28 Cal. App. 4Th 1093, 33 Cal. Rptr. 2D 1919 (1994) (widespread looting, violence during riots in Los Angeles)"). The cases cited that are most comparable, namely Chalk and Juan C., involved far more egregious threats to public safety. Chalk involved the infamous 1969 "Greensboro Uprising" in which armed paramilitaries engaged in a firefight with the National Guard. Juan C. Involved the Rodney King riots, which left sixty three people dead and triggered thousands of arrests and over $1 billion in property damage.

But even assuming this emergency standard applies, Plaintiff has alleged enough facts to call into question whether or not the City was acting in good faith. Specifically, comments made

by Mayor Bottoms and Defendant Shields, particularly the vitriolic statements about "terrorism," statements like "Quite frankly, I'm ready to just lock people up," and the comments made by Mayor Bottoms and Defendant Shields generally indicated an exaggeration of unlawful elements within the protests to justify the use of emergency powers and a disenchantment with the protests themselves rather than unlawful conduct that took place during them. See Compl. at ¶¶ 15-24.

Furthermore, the policy is also questionable under the second prong of the emergency standard. The Smith line of cases specifically requires factual basis that "the restrictions … imposed were necessary to maintain order". Smith, 91 F.3d at 109 (emphasis added). Defendants cannot satisfy this standard simply by pointing out, as conceded, that there were acts of civil unrest in Atlanta. Rather, there must be some factual basis for establishing that the restrictions imposed were in some way necessary to prevent this unrest. But the Curfew Order's lack of exceptions for normal activity, and subsequent and arbitrary public statements giving contradictory exceptions (discussed in Section 1.A.1, infra) indicate that these restrictions were not necessary. To the contrary, it is unclear what purpose such a curfew served in areas in which there was no civil unrest taking place at all, particularly where the only apparent "emergency" – isolated incidents of looting or vandalism – were apparently concentrated in one particular area. In particular, the City's decision to ban some, but not all journalists from working, to disperse peaceful protests but not individuals waiting in line to vote, and other exceptions indicate that the Curfew Policy was not necessary. Compare Hassan v. City of Atlanta, supra at 9 (recognizing the Curfew's overbreadth where arbitrarily exempted some, but not all, journalists from the Curfew). Where the necessity of such extreme measures is a factor in measuring overbreadth, Plaintiff has

at least put forward enough facts to call into question whether or not the standard was actually met.

B) The Curfew Policy was unlawful as applied.

But even assuming <u>in arguendo</u> that the Curfew policy is facially constitutional, it was applied unconstitutionally to Mr. George. The City's argument on this count is manipulative: if officers enforcing the curfew arrested Mr. George before 9PM, says Defendant, then such an arrest cannot be attributed to the policy, which they have interpreted narrowly only to include arrests during the time designated by the Curfew Order.

But as explained in 1.A, <u>supra</u> at 3, Plaintiff has alleged sufficient facts to indicate that the City had a custom of enforcing the Curfew outside of the alotted time, as indicated by numerous reports of either arresting individuals like Mr. George before the stated curfew time or trapping individuals to prevent them from leaving at the appropriate time and then arresting them. Furthermore, Mr. George was charged only with violating the Curfew Order and no other offenses. <u>Compl</u>. at ¶¶ 64. These facts allege enough to indicate that the City expected, encouraged, or was at least deliberately indifferent to the arrest of individuals for Curfew violations outside the Curfew's express terms.

As such, even ignoring the numerous defects afflicting the Curfew's facial validity, the City is responsible for a policy that when applied, plainly punished First Amendment protected speech by arresting demonstrators even when they made every effort to comply with the policy.

**2) The Curfew Policy was responsible for Mr. George's false arrest and retaliatory arrest and constituted selective enforcement against him.**

A) False Arrest

For largely the reasons discussed in 1.A and/or 1.B, <u>supra</u> at 3, 8, the Complaint properly alleges enough facts on which a reasonable trier of fact could conclude a causal relationship between the City's Curfew policy and Mr. George's arrest. Where the arrest took place without probable cause, it constitutes false arrest. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004).

B) Retaliatory Arrest

B.1) Retaliatory Arrest Without Probable Cause

Where there was no probable cause for the arrest and where it was in response to First Amendment-protected speech and where casuation exists, the arrest constitutes retaliatory arrest. See <u>DeMartini v. Town of Gulf Stream</u>, 942 F.3d 1277, 1289 (discussing elements of retaliation generally and general requirement of no-probable-cause).

B.2) Retaliatory Arrest Regardless of Probable Cause: Selective Enforcement

Alternatively, even if the arrest was pursuant to probable cause, the arrest would still constitute retaliatory arrest where it was the result of selective enforcement against Mr. George relative to similarly situated others, such as voters waiting in line. <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1727 (2019) ("...the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been").

Defendant City of Atlanta alleges that Mr. George was not "similarly situated" to voters standing in line, and as such, cannot claim selective enforcement. In fact, individuals waiting to vote and individuals leaving a protest are similarly situated: just as voters waiting in line are

engaging in activity that is incidental to engaging in protected political activity, so too was Mr. George when he was leaving the protest.

Like the right to vote, the right of public assembly is a fundamental right. Where legislation classifies different people such that they receive different treatment under the law, and where a fundamental right or a suspect class is implicated, the Court reviews the classification under strict scrutiny. Gary v. City of Warner Robins, 311 F.3d 1334, 1337 (11th Cir. 2002). As such, this is the appropriate standard for measuring the Curfew as it applied to Mr. George but not to individuals standing in line to vote.

The City cannot satisfy this exacting test. As indicated in 1.B, supra, the Curfew is overbroad in part because of its arbitrary exceptions and failure to indicate why the Curfew in its entirety was necessary, meaning that it does not pass muster even under a lower standard of scrutiny. But where the Curfew is subject to strict scrutiny, the failure is even greater. The City needs to establish not only a compelling government interest in arresting Mr. George but not voters, but also that the Curfew was narrowly tailored to that compelling interest in arresting Mr. George but not the voters. The only compelling government interest in question was to stop civil unrest, and for the reasons given in 1.A.2, supra at 5, this is itself questionable. But even insofar as this compelling interest test is met, there is no apparent reason that Mr. George, when leaving a protest, posed any greater threat to achieving this government interest than individuals waiting to vote. Hence, Mr. George's arrest should be understood as selective enforcement in violation of the First and Fourteenth Amendments.

## CONCLUSION

Defendant City of Atlanta's Motion to Dismiss should be denied.

Respectfully submitted this 3rd Day of October, 2022.

/s/ Amith Gupta
Amith Gupta, Esq.
GA Bar No. 149222
American Trial Law Litigators, LLC
925B Peachtree St. NE #2151
Atlanta, GA 30309
Tel: (408) 355-5782
E-mail: amithrgupta@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing MOTION FOR EXTENSION OF TIME TO SERVE PROCESS to the Clerk of Court and all counsel of record via the ECF system.

This 3rd day of October, 2022.

/s/ Amith Gupta
Amith Gupta, Esq.
GA Bar No. 149222
American Trial Law Litigators, LLC
925B Peachtree St. NE #2151
Atlanta, GA 30309
Tel: (408) 355-5782
E-mail: amithrgupta@gmail.com